[Cite as *Chagrin Falls v. Calabrese*, 2014-Ohio-5340.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101197**

**VILLAGE OF CHAGRIN FALLS**

PLAINTIFF-APPELLANT

vs.

**NICOLE N. CALABRESE**

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Bedford Municipal Court
Case No. 13 TRC 01824

**BEFORE:** McCormack, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 4, 2014

**ATTORNEYS FOR APPELLANT**

Thomas M. Hanculak
Mark V. Guidetti
1360 Som Center Road
Cleveland, OH 44124


**ATTORNEYS FOR APPELLEE**

Joseph J. Triscaro
Scott M. Kuboff
Demarco & Triscaro, Ltd.
3050 Bainbridge Rd.
Suite 110
Solon, OH 44139

TIM McCORMACK, J.:

{¶1} The village of Chagrin Falls appeals from a judgment of the Bedford Municipal Court that granted a motion to suppress in favor of defendant-appellee, Nicole M. Calabrese, in an OVI matter. Finding merit to the appeal, we reverse the trial court and remand the matter for further proceedings.

## Substantive Facts and Procedural History

{¶2} Around 11:00 p.m. on March 27, 2013 p.m., Chagrin Falls police department dispatch received a call from a citizen informant, Corrine Cathcart. Cathcart reported that she and her daughter just witnessed a hit-skip incident. A white female came out of the Wine Bar and got into a dark BMW SUV. The vehicle struck, "almost flattening," a railing outside a store, "Haven Style House." The driver left the scene without stopping.

{¶3} The informant Cathcart was able to provide the BMW's license plate number. Cathcart and her daughter also provided their names, current location, phone number, and address. Cathcart indicated in addition that she would be available for further contact with the police.

{¶4} The dispatch immediately relayed the citizen informant's report to Sgt. Jason Weiskopf and Officer Greg Ferrell. A check of the BMW's license plate showed it was registered to Nicole Calabrese, a resident of Chagrin Falls. Within minutes, the two officers were at Calabrese's residence, a half mile away from where the incident occurred. A dark blue BMW with the reported license plate number was parked in the driveway. Sgt. Weiskopf observed a large dent with brown paint transfer on the hood of the vehicle, which appeared to be fresh. The vehicle's engine was still warm to the touch.

{¶5} Officer Ferrell knocked on the side door of the residence while Sgt. Weiskopf knocked on the front door. Calabrese came to the side door. Officer Ferrell advised her that the police were investigating a reported hit-skip incident, and asked her to come outside for some questions. Calabrese appeared to be confused and unsteady on her feet. When she walked out of the house, she almost fell down the steps. She was initially holding a small dog when she answered the door. When she put the dog back into the house, she closed the door on the dog. Officer Ferrell also observed that she was "speaking with a thick tongue and her speech was a little bit slurred." Her eyes were red and glassy, and she had an obvious odor of an alcoholic beverage coming from her mouth.

{¶6} Calabrese admitted she just returned from the Wine Bar ten minutes ago. Officer Ferrell pointed out to her the dent and the paint transfer on her vehicle's hood. Calabrese said she did not know how or when the damage happened. When asked how much alcohol she had consumed at the bar, she first stated she did not remember, but then stated she had one glass of wine.

{¶7} Because Calabrese showed signs of intoxication and admitted she had just returned home from the bar, Officer Ferrell suspected she had driven while intoxicated and proceeded to ask her to perform the field sobriety tests. The officer observed six clues on the HGN test, four clues on the walk-and-turn test, and two clues on the one-leg-stand test. Because she failed the tests, Officer Ferrell arrested her for OVI.

{¶8} The village of Chagrin Falls subsequently cited Calabrese for OVI, leaving the scene of an accident, and failure to control. She filed a motion to suppress the evidence. The Bedford Municipal court held a hearing and granted the motion to suppress. Chagrin Falls now appeals. Its sole assignment of error states: "The trial court erred by granting Defendant's

motion to suppress evidence relating to Defendant's intoxication on the grounds that the Village did not possess reasonable articulable suspicion to conduct an investigative stop of defendant."

## Standard of Review

{¶9}    An appellate review of a motion to suppress presents a mixed question of law and fact.    *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 22 (8th Dist.). Once we accept the factual findings as true, however, we must independently determine, as a matter of law and without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.    *State v. Lloyd*, 126 Ohio App.3d 95, 709 N.E.2d 913 (7th Dist.1998).

## Analysis

{¶10} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless certain delineated exceptions apply.    *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).    When a search and seizure matter    involves the presence of police officers in a home, the courts require the existence of exigent circumstances.    Absent certain enumerated exigent circumstances, a warrantless search or seizure effected in a home is per se unreasonable.[1] *State v. Freeman*, 8th Dist. Cuyahoga No. 95608, 2011-Ohio-5651, ¶ 16, citing *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

---

[1]The courts in Ohio have identified several exceptions to the warrant requirement justifying a warrantless search of a home: (1) an emergency situation, (2) search incident to an arrest, (3) "hot pursuit" of a fleeing felon, and (4) easily destroyed or removed evidence.    *State v. Cheers*, 79 Ohio App.3d 322, 325, 607 N.E.2d 115 (6th Dist.1992); *State v. King*, 8th Dist. Cuyahoga No. 80573, 2003-Ohio-1143, ¶ 16.

{¶11} In this case, however, the heightened protection for a home does not apply, because this case does not involve a warrantless forced entry into a home. The suspect here voluntarily came out of her residence to talk to the investigating officers. Therefore, we are not presented with an opportunity to analyze the propriety of a warrantless arrest in a home. In this case, the Fourth Amendment is not implicated until Calabrese was subjected to the field sobriety tests.

{¶12} Both Chagrin Falls and Calabrese analogize the police's action in this case to a "*Terry* stop," an exception to Fourth Amendment's warrant requirement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under this exception, a law enforcement officer may lawfully stop an individual if the officer possesses the requisite reasonable suspicion based on specific and articulable facts that the person is, was, or is about to be engaged in criminal activity.

{¶13} It is unclear whether the unique circumstances of this case should be construed and analyzed as a *Terry* stop. Regardless of whether we couch the analysis in terms of a *Terry* stop, the same standard should apply: a police officer must have a reasonable suspicion based upon articulable facts that the suspect is intoxicated before the officer may administer field sobriety tests. *Cleveland v. Harding*, 8th Dist. Cuyahoga No. 98916, 2013-Ohio-2691, ¶ 6. Thus, the issue in this appeal is whether the facts in this case demonstrate that Officer Ferrell had a reasonable suspicion that Calabrese had operated a vehicle while intoxicated, to justify a brief detention of her for field sobriety testing.

{¶14} Reasonable suspicion means something more than an inchoate and unparticularized suspicion or "hunch," but something less than the level of suspicion required for probable cause. *Terry* at 21. To show a suspicion is reasonable, an officer must point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably

warrant the intrusion. *State v. Gustin*, 87 Ohio App.3d 859, 860, 623 N.E.2d 244 (12th Dist.1993). Also, an objective and particularized suspicion that criminal activity was afoot must be based on the totality of the circumstances. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). Under the totality-of-the circumstances analysis, a court should consider "'both the content of the information possessed by police and its degree of reliability.'" *State v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1997), quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{¶15} This case involved a report from an identified citizen informant. Of the three classes of informants (the anonymous informant, an informant from the criminal world who has provided previous reliable tips, and identified citizen informant), the courts have always credited the identified citizen informant with greater reliability. *Weisner* at 300.

{¶16} Here, the dispatcher related to the officers a citizen informant's report that a BMW SUV with a certain license plate number hit a railing outside a store and left the scene. The license plate number led the officers to Calabrese's residence, within minutes of the citizen informant's call. The officers saw the reported BMW parked on the driveway. The vehicle had a large dent and fresh paint transfer on the front right side of its hood, corroborating the informant's tip of the vehicle's involvement in a hit-skip.

{¶17} Continuing their investigation of the incident, the officers talked to Calabrese at her door. She admitted to have just returned from the Wine Bar; her eyes appeared glassy to the officers and her speech slurred; and she seemed unsteady on her feet. When the officers pointed out the large dent and the paint transfer on the hood of her vehicle, she stated she did not know how or when the damage occurred. Under these circumstances, the officers had a reasonable suspicion based on specific and articulable facts to make the brief detention of Calabrese to

administer the field sobriety tests, to confirm — or dispel — the suspicion that Calabrese had driven under the influence. When the field sobriety tests indicated that she was intoxicated, the officers had probable cause to arrest her for OVI.

**Alleged Inconsistency in Information Supplied by Citizen Informant**

{¶18} Calabrese's argument in support of her motion to suppress focuses on certain inconsistency in the information provided by the citizen informant. Calabrese points out that the informant described the vehicle as "backing into" the railing in her 911 call to the dispatcher, yet, the damage to the vehicle occurred on the *front* right portion of the hood. Calabrese claims that, because of the inconsistency, the officers could not possibly have a reasonable suspicion of a criminal activity justifying any further investigation, including the administration of the field sobriety tests. The trial court was persuaded by this argument and granted Calabrese's motion to suppress on this ground.

{¶19} Our review of the record, including the 911 tape, reflects that Cathcart stated to the dispatcher that the BMW *backed* into the rail. According to the incident report filed subsequently by Sgt. Weiskopf, who interviewed Cathcart within an hour of the incident, Cathcart stated that she saw the driver "get into the driver's position of the BMW, *back up, then pull forward*, and strike the railing position of the ramp." (Emphasis added.)

{¶20} The 911 tape also revealed that the dispatcher informed the officers that a witness saw the BMW *striking a railing,* without giving the officers any further detail. Sgt. Weiskopf testified consistently on direct examination. When asked by the defense counsel on cross-examination if the initial call that came into the police department referenced a vehicle *backing into* the railing, Sgt. Weiskopf answered "yes," presumably based on his subsequent knowledge of the 911 call.

**{¶21}** That information, however, does not change the fact that at the time the officers investigated the incident, they were only aware that the BMW struck a railing. Regardless of whether the vehicle moved forward or backward into the rail, the issue here is whether the officers had a reasonable suspicion that Calabrese drove the vehicle while intoxicated.

**{¶22}** The existence of a reasonable suspicion must be evaluated by the facts and circumstances *known to the officer at the time* of the alleged improper search or seizure. Our review of the audiotape shows that the dispatcher related to the officers that a BMW *struck a railing* outside a store. The officers' observation of a large dent and fresh paint transfer on the hood of the vehicle *was* consistent with that information. The officers reasonably decided to further investigate the incident. Subsequently, Calabrese's admission that she was drinking earlier in the Wine Bar and had just returned from the bar, coupled with the officers' observation of her slurred speech and glassy eyes, provided a reasonable suspicion justifying the field sobriety tests.

**{¶23}** Based on the foregoing, we conclude the trial court improperly granted the motion to suppress the evidence. The assignment of error is sustained.

**{¶24}** Judgment reversed and remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR