OPINION
{¶ 1} James L. Pryor appeals from his conviction and sentence following a no-contest plea to one count of attempted possession of powder cocaine in an amount exceeding five-hundred grams but less than one-thousand grams.
 {¶ 2} In his sole assignment of error, Pryor contends the trial court erred in overruling his motion to suppress the cocaine. The essence of his argument is that police obtained the cocaine during a traffic stop that was illegally prolonged to allow a trained dog to conduct a "free-air sniff" outside of his vehicle. Upon review, we find no error in the trial court's conclusion that the traffic stop was not unlawfully prolonged. Accordingly, we will overrule Pryor's assignment of error and affirm the trial court's judgment.
 I. Background {¶ 3} Gerald Bemis, a ten-year veteran of the Montgomery County Sheriff's Department, observed a Chevy Tahoe with Pennsylvania license plates make an illegal lane change on Interstate 70. Bemis stopped the vehicle for the traffic violation and approached Pryor, the driver and only occupant of the car. Upon reaching the Tahoe, Bemis smelled a strong odor of air freshener and saw approximately six air fresheners hanging from the gear shift and elsewhere in the vehicle.
 {¶ 4} When Pryor could not produce a driver's license, proof of insurance, or any other identification, Bemis escorted him to the police cruiser and attempted to verify his identity. Pryor gave Bemis the name Antwon Hall and a date of birth and professed to have a valid Pennsylvania driver's license. Bemis relayed the information to his dispatcher, who conducted an out-of-state records check. The dispatcher found nothing on file in Pennsylvania for an individual with the name and date of birth supplied by Pryor. Bemis conducted an Ohio records check using the same information, and it too came back "NIF" or "nothing in file." In addition, Bemis learned that the Tahoe was not registered to an Antwon Hall.
 {¶ 5} Unable to confirm Pryor's identify, and concerned that the Tahoe might be stolen or that Pryor might be unlicensed or have an outstanding warrant, Bemis contemplated taking him to jail for fingerprinting to try to establish his identity. Bemis also called for backup to assist him with the stop. He explained his rationale for doing so as follows: "I just didn't feel comfortable with uh — who I had, I didn't know [what] crimes he may have committed or just committed or who he was, [he] had no identification whatsoever, could be a stolen car, you know maybe just not reported or you know for safety basically."
 {¶ 6} As he waited for backup to arrive, Bemis began completing "form 16," a citizen-contact form that department regulations require to be filled out on every stop. Bemis had not yet issued a traffic citation for the lane-change violation because he could not confirm Pryor's identity. While Bemis filled out the paperwork concerning his contact with Pryor, Jeffrey Becker of the Clay Township Police Department arrived on the scene.
 {¶ 7} Bemis, a K-9 handler who had his dog, Kain, with him, informed Becker that he was going to run the dog around Pryor's vehicle. Kain proceeded to conduct a "free-air sniff" outside of the Tahoe. The dog "hit" or alerted on the front passenger side of the vehicle. Bemis and Becker subsequently searched the passenger compartment and discovered a small amount of marijuana between the seats. Bemis then opened the hood and searched the engine compartment. As part of the search, he removed the air-filter cover and found a plastic bag containing powder cocaine.
 {¶ 8} Following his arrest, Pryor moved to suppress the cocaine found in the Tahoe. In support, he argued that Bemis unlawfully had extended the duration of the traffic stop to perform the free-air sniff that led to discovery of the cocaine. The trial court overruled Pryor's motion in a June 11, 2004, decision, order, and entry. In its ruling, the trial court held that the lane-change violation justified the traffic stop. The trial court then found that approximately twenty minutes had elapsed from the time of the stop to the time of the free-air sniff. The trial court also held that Bemis did not unlawfully prolong the stop for purposes of conducting the sniff. Finally, the trial court held that the canine sniff was not a "search" as contemplated by the Fourth Amendment, that Kain's alert gave the officers probable cause to search the vehicle, and that the search of the engine compartment was permissible.
 {¶ 9} After the trial court's denial of his suppression motion, Pryor pled no contest to
 {¶ 10} one count of attempted possession of powder cocaine in an amount exceeding five-hundred grams but less than one-thousand grams. The trial court sentenced him to four years in prison. This timely appeal followed.
 II. Analysis {¶ 11} In his sole assignment of error, Pryor argues that the trial court should have sustained his suppression motion because Bemis unnecessarily prolonged the traffic stop to facilitate the free-air sniff.
 {¶ 12} "When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896 (citation omitted). If the trial court's factual findings of fact are supported by competent, credible evidence, we must accept those findings. Id. However, we review any conclusions of law de novo. Id.
 {¶ 13} In the present case, Pryor does not dispute the validity of the original traffic stop. See Whren v. UnitedStates (1996), 517 U.S. 806; Dayton v. Erickson (1996),76 Ohio St.3d 3. Moreover, it is well established that the use of a trained narcotics dog does not constitute a "search" within the meaning of the Fourth Amendment. State v. Hudson, Miami App. No. 2003-CA-39, 2004-Ohio-3140; Illinois v. Caballes (2005), 534 U.S. ___, 125 S.Ct. 834. Therefore, an "officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." Keller, supra (citations omitted). It is equally settled that when a trained narcotics dog alerts on a lawfully stopped vehicle, an officer has probable cause to search the vehicle. State v. Greenwood,
Montgomery App. No. 19820, 2004-Ohio-2737, at ¶ 11-12. Consequently, the crucial issue before us is whether Pryor was unreasonably detained during the interval between the initial stop and the moment that Kain alerted to narcotics in the Tahoe.
 {¶ 14} In support of his argument, Pryor relies on our recent decision in State v. Ramos, 155 Ohio App.3d 396,2003-Ohio-6535. There we held that a motorist with an expired driver's license was detained beyond the time necessary to complete a traffic stop in order to allow a K-9 unit to arrive and perform a drug sniff. In that case, a police officer stopped Loretta Ramos for a marked-lanes violation at approximately 5:45 a.m. Nearly an hour later, a drug-sniffing dog arrived and alerted on her vehicle. On appeal, we held that the officer who made the traffic stop had not acted diligently in issuing a citation or arranging for removal of the vehicle by a properly licensed driver.[1]
 {¶ 15} Upon review, we find Pryor's argument to be unpersuasive and his reliance on Ramos to be misplaced. InRamos, we recognized that "[t]he duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable." Ramos,155 Ohio App.3d at 401. "`When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates." Id. (citations omitted). "[A]fter the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention." Id.
 {¶ 16} In Ramos, we concluded that police failed to act diligently in issuing a citation and unreasonably detained the unlicensed driver and her vehicle after she indicated that a nearby relative could pick up her car. In contrast to Ramos,
the record in the present case persuades us that Pryor's detention was not unduly prolonged to facilitate a drug sniff. Unlike the typical case where a motorist is detained while police await arrival of a K-9 unit, Bemis' dog, Kain, already was present. Moreover, the trial court found that the drug sniff occurred within approximately twenty minutes of the traffic stop. This is not an unusual length of time for a traffic stop, particularly when an out-of-state motorist lacks a driver's license, proof of insurance, or any other form of identification. We note too that in the time period before the free-air sniff Bemis remained busy attempting to determine Pryor's identity and completing required paperwork. At the time of the drug sniff, he still had not discovered Pryor's true identity. Pryor's own acts of providing false information about his identity and concealing his status as an unlicensed driver necessarily prolonged the traffic stop and provided Bemis with additional justification for detaining him.
 {¶ 17} For the foregoing reasons, we conclude that the free-air sniff occurred within a reasonable length of time after the traffic stop, and Pryor was not unreasonably detained.[2] Accordingly, we find no merit in his assignment of error.[3]
 III. Conclusion {¶ 18} Based on the reasoning set forth above, we overrule Pryor's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
Donovan, J., and Young, j., concur.
Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Prior to arrival of the drug-sniffing dog in Ramos, the driver had informed the stopping officer that her sister, who lived in nearby Huber Heights, had a valid license and would come pick up the car. The officer responded, "Let's just wait. Let's wait for this canine and everything." Ramos,155 Ohio App.3d at 403.
[2] This conclusion renders moot the State's alternative argument that if the traffic stop was extended to facilitate a drug sniff, Pryor's continued detention was lawful because Bemis had a reasonable, articulable suspicion that the Tahoe contained drugs.
[3] In his appellate brief, Pryor also claims Bemis and Becker "dismantled" and tore apart his vehicle while searching for drugs. The trial court expressly rejected this allegation, however, and found Pryor's testimony on the issue not credible. The trial court made a factual finding that the officers merely "popped open" the air-filter cover by opening two clips. This conduct plainly did not exceed the permissible scope of an automobile search.