[Cite as *State v. Matheney*, 2016-Ohio-7690.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26876 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-720 |
| | : | |
| LARRY A. MATHENEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 10th day of November, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANN M. GRABER, Atty. Reg. No. 0091731, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 2372 Lakeview Drive, Suite H, Beavercreek, Ohio 45431
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Larry A. Matheney, appeals from his conviction in the Montgomery County Court of Common Pleas after pleading no contest to improperly handling a firearm in a motor vehicle and carrying a concealed weapon. Specifically, Matheney challenges the trial court's failure to suppress evidence that was discovered during a traffic stop, which Matheney claims was made without probable cause or reasonable suspicion of criminal activity. Matheney also claims that the traffic stop was unreasonably prolonged for purposes of conducting a canine sniff of his vehicle. For the reasons outlined below, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 2} On April 17, 2015, the Montgomery County Grand Jury returned a two-count indictment charging Matheney with improperly handling a firearm in a motor vehicle in violation of R.C. 2923.16(B) and carrying a concealed weapon in violation of R.C. 2923.12(A)(2), both felonies of the fourth degree. The charges stemmed from a March 11, 2015 traffic stop in Kettering, Ohio, during which officers discovered a loaded firearm and other contraband in a vehicle driven by Matheney after conducting a canine sniff.

{¶ 3} After his indictment, Matheney filed a motion to suppress the evidence discovered during the traffic stop. In support of his motion, Matheney claimed he was unlawfully detained during the traffic stop in question because there was no valid basis upon which to initiate the stop and the stop was unreasonably prolonged for purposes of conducting a canine sniff. The matter then proceeded to a suppression hearing where the trial court heard testimony from the police officer who initiated the traffic stop of

Matheney's vehicle, Officer Kevin Sanford of the Kettering Police Department. The trial court also heard testimony from the backup officer at the scene, Kettering Officer Devin Maloney, and the canine unit officer who conducted the canine sniff, Montgomery County Sheriff's Deputy John Campbell.

{¶ 4} Officer Sanford testified that during the early morning hours of March 11, 2015, he was on duty in a marked cruiser when he noticed a vehicle in front of him turn north onto Galewood Street from Talisman Drive in Kettering, Ohio, without using a turn signal. Sanford further testified that while stopped behind the same vehicle at a stoplight, he noticed the vehicle had a broken taillight. Upon observing these two traffic violations, Sanford testified that he activated his overhead lights and stopped the vehicle on Woodman Drive. According to Sanford, the traffic stop was initiated and called out to dispatch at 2:09 a.m.

{¶ 5} Continuing, Sanford testified that he approached the vehicle and collected identification cards from the driver, later identified as Matheney, and his front-seat passenger. Upon doing so, Sanford immediately noticed that Matheney appeared to be nervous. Sanford claimed that Matheney's complexion was red and that he was sweating and speaking rapidly. Sanford also observed that Matheney was physically rocking back and forth in his seat and continually moving his hands from his lap to the steering wheel. In addition, Sanford noticed that Matheney kept looking back toward a bag that was lying on the back seat of the vehicle within Matheney's reach. As a result of this nervous behavior, Sanford asked Matheney if he had anything illegal in the vehicle, to which Matheney replied: "Not that I know of." Suppression Hearing Trans. (Aug. 13, 2015), p. 10.

{¶ 6} After speaking with Matheney, Sanford testified that he contacted dispatch and requested a canine unit based on Matheney's nervousness. Sanford claimed that he made the request as he was walking back to his cruiser to run Matheney and the passenger's information through his computer system. He also claimed that when he ran the vehicle's license plate information, he recognized the plate as one that he had run before. Sanford testified that he then remembered he had seen the same vehicle at a known drug house on Crestwell Place.

{¶ 7} As Sanford was running the information through his computer, Officer Maloney arrived at the scene and approached Sanford's cruiser. Shortly after Maloney made contact with Sanford, Sanford looked up from inside his cruiser and saw Matheney reaching back into the bag that was sitting on the back seat. Maloney also saw Matheney make an abrupt movement toward the back seat of the vehicle. Upon seeing this, both officers became concerned for their safety. Sanford testified that he was concerned that Matheney was reaching for a firearm, so he and Maloney immediately approached Matheney and asked him to exit the vehicle. Sanford then requested consent to conduct a pat-down search on Matheney for officer safety, which Matheney permitted. The pat down yielded no weapons.

{¶ 8} After the pat-down search, Sanford returned to his cruiser to begin writing the citations for Matheney's two traffic violations. During this time, Maloney kept an eye on Matheney and the passenger. Sanford testified that the citation was only partially complete when the canine unit arrived. The canine unit officer, Deputy Campbell, testified that he arrived at the scene at 2:29:49 a.m. Campbell made brief contact with Sanford who requested a free-air sniff around Matheney's vehicle. Campbell testified

that he walked Koda, the canine, around the vehicle and that Koda alerted to the vehicle within three to five minutes of their arrival.

{¶ 9} Following Koda's alert, Sanford testified that he conducted a search of the vehicle and immediately checked the bag in the back seat that Matheney had reached for earlier. In the bag, Sanford found a loaded Walther .380 handgun sitting right underneath the bag's flap enclosure. The bag also contained a small amount of marijuana, pipes used for smoking methamphetamine, and several documents with Matheney's name and social security number on them. Sanford testified that he asked Matheney's passenger who the bag belonged to and that the passenger indicated it was Matheney's. Matheney was then arrested and charged for the instant offenses.

{¶ 10} Based on the foregoing testimony and Sanford's written police report, which was admitted into evidence as Defendant's Exhibit A, the trial court overruled Matheney's motion to suppress. The trial court made its ruling at a separate hearing held on August 18, 2015, and did not issue any written findings of fact or conclusions of law. At the hearing, the trial court found that the traffic stop was justified by the turn signal and taillight violations observed by Sanford. The trial court also found that Matheney's furtive movements toward the back seat of the vehicle provided a sufficient basis for the pat-down search, which prolonged the traffic stop. The court concluded that under the totality of the circumstances, including the interruption of removing Matheney from the vehicle for the pat-down search, the stop was not unreasonably delayed for purposes of allowing a canine sniff.

{¶ 11} Matheney now appeals from the trial court's decision overruling his motion to suppress, raising one assignment of error for review.

## II.  Assignment of Error

{¶ 12}  Matheney's sole assignment of error is as follows:

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS.

{¶ 13} Under his single assignment of error, Matheney contends the trial court erred in overruling his motion to suppress because the traffic stop in question violated his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, Matheney claims that Officer Sanford did not have probable cause or reasonable suspicion to justify stopping his vehicle.  Matheney also argues the traffic stop was unreasonably prolonged for the purpose of conducting a canine sniff.

*Standard of Review*

{¶ 14} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.' "  *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."  (Citation omitted.) *Burnside* at ¶ 8.  "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  (Citation omitted.)  *Id.*

*Law and Analysis*

**{¶ 15}** As noted above, Matheney initially claims that Officer Sanford did not have probable cause or reasonable suspicion to justify stopping his vehicle. We disagree.

**{¶ 16}** A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment to the United States Constitution, which protects individuals from unreasonable searches and seizures. *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Accordingly, when a police officer stops a vehicle and temporarily detains its occupants a "seizure" has occurred within the meaning of the Fourth Amendment. *State v. Leveck*, 196 Ohio App.3d 26, 2011-Ohio-1135, 962 N.E.2d 316, ¶ 10 (2d Dist.), citing *Prouse* at 653. It is well established that such a seizure is reasonable and valid under the Fourth Amendment when " 'the stop is based on an observed traffic violation or if the police officer has reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring.' " *State v. Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597, ¶ 11 (2d Dist.), quoting *Dayton v. Erickson*, 76 Ohio St.3d 3, 7, 665 N.E.2d 1091 (1996). Therefore, if a traffic stop is based on a traffic violation, such as one's failure to signal a turn, which occurred in the officer's presence, the officer possesses probable cause to stop the vehicle and the stop is constitutionally valid. *Erickson* at 11.

**{¶ 17}** In this case, Officer Sanford testified that he initiated the traffic stop in question as the result of observing Matheney commit a turn signal violation and for having a broken taillight. In observing these violations, Sanford was clearly justified in initiating

a traffic stop. Nevertheless, Matheney argues that Sanford was not justified in stopping him for a taillight violation because Sanford did not notice his broken taillight until after he stopped him for the turn signal violation. This argument, however, is unsupported by the record. Sanford specifically testified that he noticed the taillight violation when he was stopped behind Matheney at a stoplight, and that he activated his overhead lights and stopped Matheney's vehicle after seeing both the turn signal and taillight violations. Suppression Hearing Trans. (Aug. 13, 2015), p. 8, 29.

{¶ 18} Matheney also argues that Sanford was not justified in stopping him for a turn signal violation because Sanford testified that he did not know or ask whether Matheney had used a hand signal, which is a legal way to indicate a turn. However, a review of the record reveals that during his cross and redirect examinations, Sanford testified that he did not observe Matheney use any sort of hand signal. *Id.* at 29, 44-45.

{¶ 19} In addition, Matheney never affirmatively claimed in either his motion to suppress or his appellate brief that he in fact used a hand signal to indicate his turn. Regardless, even if Matheney had made such a claim, it would not negate Sanford's testimony that he did not observe Matheney use a hand signal. *See State v. Petty*, 5th Dist. Fairfield No. 15-CA-57, 2016-Ohio-1425, ¶ 15-16 (a motorcyclist's claim that she used a hand signal to indicate the approaching turn does not negate the logical perception of the troopers on the scene who testified that they did not see her initiate any signal); *State v. Williamson*, 9th Dist. Summit No. 21147, 2002-Ohio-7320, ¶ 8-10 (because an officer may initiate a stop based on reasonable suspicion of a traffic violation, a stop is justified if the officer claims he did not see a hand signal—the State does not have to prove beyond a reasonable doubt that the offense occurred).

**{¶ 20}** Whether Matheney used a hand signal was for the trial court to determine as trier of fact. *Williamson* at ¶ 10. Although the trial court in this case did not issue any written findings of fact, the record nevertheless indicates that the court found no hand signal was used since it ultimately concluded that the traffic stop was justified, in part, by a turn signal violation. *See* Suppression Ruling Trans. (Aug. 18, 2015), p. 3. Because the evidence of record supports that finding we must accept it as true and apply it to the applicable legal standard. In doing so, we conclude that Sanford had probable cause to stop Matheney's vehicle based on the traffic violations he observed. Accordingly, the traffic stop at issue was constitutionally valid and Matheney's claim to the contrary lacks merit.

**{¶ 21}** Matheney next argues that the traffic stop was unreasonably prolonged for purposes of allowing the officers to conduct a canine sniff of his vehicle. We again disagree.

**{¶ 22}** It is well established that "[t]he duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable." *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 10 (2d Dist.), citing *State v. Chatton*, 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). (Other citation omitted.) " 'When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Ramos* at ¶ 11, quoting *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, ¶ 36; *State v. Greene,* 2d Dist. Montgomery No. 25577, 2013-Ohio-

4516, ¶ 22. " 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *State v. Hill*, 2d Dist. Montgomery No. 26345, 2016-Ohio-3087, ¶ 11, citing *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

{¶ 23} Ordinarily, " '[a] canine sniff by a drug detection dog of the exterior of a vehicle lawfully detained for a traffic stop does not implicate Fourth Amendment rights.' " *Greene* at ¶ 22, quoting *State v. Kuralt*, 2d Dist. Montgomery No. 20532, 2005-Ohio-4529, ¶ 11. (Internal citation omitted.) Therefore, "[a] police officer need not have a reasonable suspicion that a vehicle contains contraband prior to summoning a canine drug unit." *State v. Matthews*, 2d Dist. Miami No. 2014-CA-23, 2015-Ohio-1750, ¶ 10, citing *State v. Thomas*, 2d Dist. Montgomery No. 22833, 2009-Ohio-3520, ¶ 15. (Other citation omitted.) In addition, a police officer need not have a reasonable suspicion that a vehicle contains contraband prior to conducting a canine sniff of the vehicle during a traffic stop " 'so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation.' " *Greene* at ¶ 22, quoting *Kuralt* at ¶ 11. However, " 'after the reasonable period of time for issuing the traffic citation has passed, an officer must have a reasonable articulable suspicion of illegal activity to continue the detention.' " *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, ¶ 15, quoting *Ramos* at ¶ 13.

{¶ 24} In *State v. Desman*, 2d Dist. Montgomery No. 19730, 2003-Ohio-7248, we held that a canine sniff during a traffic stop did not unreasonably extend the stop beyond what was necessary to resolve the issue that led to the stop under circumstances where

the sniff took place only 12 minutes after the stop was initiated and the sniff occurred before the officer had even begun to write the traffic citation for the motorist's traffic violation. *Id.* at ¶ 28-32.

**{¶ 25}** Similarly, in *Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, we held that an out-of-state motorist stopped for a traffic violation was not unreasonably detained by a canine sniff that took place 20 minutes after the stop was initiated when, prior to the canine sniff, the officer was busy preparing required paperwork and attempting to discover the motorist's identity, which was still unknown to the officer at the time of the sniff. *Id.* at ¶ 16. We concluded that the motorist's acts of providing false information about his identity and concealing his status as an unlicensed driver necessarily prolonged the traffic stop and provided the officer with additional justification for detaining him. *Id.*

**{¶ 26}** Furthermore, in *Matthews*, 2d Dist. Miami No. 2014-CA-23, 2015-Ohio-1750, we held that a canine sniff during a traffic stop for fictitious tags did not unreasonably extend the duration of the stop beyond what was necessary to investigate the tags where the officer remained busy questioning the driver and defendant about the title of the vehicle and attempting to contact the titled owner of the vehicle in response to the defendant's request that the vehicle not be towed. *Id.* at ¶ 18-20. The canine unit arrived approximately 33 minutes after the stop was initiated and the officer testified that there was no downtime between the initial stop and the canine unit's arrival, as the officer had been investigating the matter the entire time as opposed to just waiting for the canine unit to arrive. *Id.* at ¶ 17, 20. In addition, the officer had not yet issued the citation or arranged for the tow at the time of the canine unit's arrival. *Id.* at ¶ 20.

**{¶ 27}** In *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d

492 (2015), the United States Supreme Court also determined that the Fourth Amendment does not prohibit certain unrelated investigative activities during the course of a traffic stop, such as the use of a canine unit, so long as they do not extend the duration of the detention. *Id.* at paragraph one of the syllabus, citing *Illinois v. Caballes*, 543 U.S. 405, 406, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). The court recognized that "a traffic stop 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Id.* at 1614-1615, quoting *Caballes* at 407. However, the court emphasized that "the critical question * * * is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff * * * adds time to the stop." (Citations omitted.) *Id.* at 1616.

{¶ 28} In *Hill*, 2d Dist. Montgomery No. 26345, 2016-Ohio-3087, the appellant motorist relied on *Rodriguez* for the proposition that his traffic stop for a lane change violation was unreasonably prolonged for the sole purpose of a canine sniff because the officer who initiated the stop ceased processing his traffic citation in order to conduct the sniff, which extended the duration of the stop. *Id.* at ¶ 6, 13. We noted in *Hill* that *Rodriguez* "arguably prohibits seizures resulting from inquiries unrelated to the purpose for a traffic stop that 'measurably extend[s] the duration of the stop.'" *Id.* at ¶ 13, citing *Rodriguez* at 1615. However, because the canine sniff in *Hill* was performed prior to *Rodriguez* being decided, we declined to apply *Rodriguez* noting that "[s]earches conducted in objectively reasonable, good-faith reliance on binding precedent are not subject to the exclusionary rule, even though hindsight subsequently reveals that reliance to have been misplaced." *Id.*, citing *State v. Johnson*, 141 Ohio St.3d 136, 2014-Ohio-5021, 22 N.E.2d 1061, ¶ 49.

{¶ 29} We ultimately determined "that [the officer's] actions in performing the drug sniff were objectively reasonable in view of the existing appellate jurisprudence in this district at that time." *Id.* at ¶ 14. The officer in *Hill* initiated a traffic stop, asked the motorist for his license and registration, called for backup, and then returned to his cruiser to run the motorist's information through his computer system. *Id.* at ¶ 8. The officer who initiated the stop was still receiving the motorist's information from his computer when the backup officer arrived. Upon the backup officer's arrival, the officer who initiated the stop conducted the canine sniff before preparing the traffic citation. *Id.* The canine alerted to the motorist's vehicle no more than five to ten minutes after the traffic stop was initiated. *Id.* We thus concluded the canine sniff occurred within the time reasonably required for the issuance of the traffic citation. *Id.* at ¶ 12.

{¶ 30} The record indicates that Officer Sanford initiated the traffic stop at 2:09 a.m., the canine unit arrived approximately 21 minutes later, and the canine alerted to the vehicle within three to five minutes of the unit's arrival. In other words, the canine alerted within approximately 24 to 26 minutes of the initial stop. Sanford testified that it normally takes him 12 to 15 minutes to issue two misdemeanor citations without any intervening circumstances. However, in this particular case, Officer Sanford was faced with intervening circumstances that prolonged the traffic stop. Specifically, Matheney's act of reaching back toward the bag on his back seat while Officer Sanford was running Matheney's information in his cruiser prolonged the stop beyond the standard 12 to 15 minutes, as it forced Sanford to stop what he was doing and pat down Matheney for purposes of officer safety.

{¶ 31} As in *Desman, Pryor, Matthews,* and *Hill,* in the time before the canine sniff

was conducted, Officer Sanford remained busy preparing Matheny's traffic citation, which he had not yet completed when the canine unit arrived. Moreover, under the specific facts of this case, we do not find that 24 to 26 minutes is an unusual length of time for the traffic stop in question given that Matheney engaged in conduct warranting a pat-down search.

{¶ 32} Because Sanford was not simply waiting for the canine unit to arrive, but rather running Matheney's information through his computer, patting Matheney down for weapons after his abrupt movement toward the back seat of the vehicle, and preparing Matheney's traffic citations, we find that under the circumstances, Sanford diligently conducted the investigation within a reasonable length of time. Accordingly, under the totality of the circumstances, we do not find that Matheney's detention was extended beyond what was reasonably necessary to resolve the issues associated with the traffic stop and to issue a traffic citation.

{¶ 33} Matheney's sole assignment of error is overruled.

### III. Conclusion

{¶ 34} Having overruled Matheney's sole assignment of error, the judgment of the trial court overruling Matheney's motion to suppress is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Ann M. Graber
Thomas M. Kollin
Hon. Gregory F. Singer