[Cite as *State v. Tillman*, 2018-Ohio-4765.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27959 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-2605 |
| | : | |
| DWIGHT N. TILLMAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of November, 2018.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

DANIEL J. DUROCHER, Atty. Reg. No. 0094080, Assistant Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
          Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Dwight N. Tillman, appeals from his conviction for one count of aggravated possession of drugs, a fifth degree felony pursuant to R.C. 2925.11(A) and (C)(1)(a). Presenting a single assignment of error, Tillman argues that the conviction should be reversed because the trial court erred by overruling his motion to suppress evidence obtained during an impermissibly prolonged traffic stop. We concur with the trial court's determination that the duration of the stop was reasonable under the circumstances, and consequently, we find that the court did not err by overruling Tillman's motion to suppress. Therefore, Tillman's conviction is affirmed.

## I. Facts and Procedural History

**{¶ 2}** In the early morning hours of February 24, 2017, an officer with the Kettering Police Department, on routine patrol along Shroyer Road, passed a vehicle being driven by Tillman in the opposite direction. Transcript of Proceedings 8:23-8:25 and 9:8-9:15 [hereinafter *Transcript*].[1] Tillman's vehicle had only one working headlight, which Tillman failed to adjust from high-beam to low-beam as he drove past the officer.[2] *See id.* at 10:1-10:5; *see also* R.C. 4513.04(A) (requiring that motor vehicles, other than motorcycles, "be equipped with at least two headlights") and R.C. 4513.15(A)(1) (requiring that motorists dim their headlights as they approach oncoming vehicles). Prompted by these violations, the officer began to trail Tillman, who then turned right from

---

[1] The transcript includes the hearing on Tillman's motion to suppress, the trial court's announcement of its ruling on the motion, the plea colloquy between Tillman and the court, and Tillman's sentencing hearing.

[2] Tillman's nephew owned the vehicle and gave Tillman permission to drive it. Transcript 23:14-23:19.

Shroyer Road onto Cushing Avenue.   Transcript 9:14-9:17.

{¶ 3} With the officer trailing him, Tillman turned left from Cushing Avenue onto Claar Avenue; immediately turned 180 degrees about; turned left from Claar Avenue onto Ingersoll Drive; and turned left from Ingersoll Drive onto Ackerman Boulevard.   *See id.* at 9:14-9:21.   Proceeding northward on Ackerman Boulevard, Tillman encountered a red light at the intersection of Ackerman Boulevard and East Dorothy Lane but did not bring his vehicle to a complete halt behind the stop line.   *See id.* at 9:21-10:5; *see also* R.C. 4511.13(C)(1)(a) (requiring that motorists "facing a steady circular red signal indication * * * stop [their vehicles] at a clearly marked stop line").   The officer initiated a traffic stop at that time, approximately 2:22 a.m.   Transcript 8:20-8:25.

{¶ 4} After initiating the stop, the officer quickly made contact with Tillman, obtained Tillman's personal information, and returned to his cruiser at approximately 2:25 a.m. to complete background checks.   *Id.* at 10:1-10:14 and 19:2-19:16.   Tillman "was pretty relaxed," and the officer later testified that he had not, at that point, decided whether to issue a traffic citation.   *Id.* at 10:18-11:3.

{¶ 5} The background checks, however, revealed a noteworthy criminal history, and in combination with Tillman's "suspicious driving behavior through the plat," an area familiar to the officer as the locus of "[a] lot of criminal activity," the officer approached Tillman again to investigate the possibility of criminal activity other than violations of traffic laws.   *Id.* at 9:14-9:25, 10:9-10:25 and 20:25-21:17.   During this second encounter, at approximately 2:28 a.m., Tillman's demeanor changed from "pretty relaxed" to "increasingly nervous," particularly when the officer requested consent for a search of his

vehicle. *Id.* at 11:2-11:15 and Ex. 1.[3]  Asked by the officer to explain why he was in the area, Tillman answered that he was headed to a residence on Corona Avenue.  *Id.* at 11:16-11:20 and Ex. 1.  The officer knew the residence identified by Tillman to be associated with drug trafficking, so he returned to his cruiser at approximately 2:31 a.m., called for a K-9 unit, and began a citation for Tillman's motor vehicle-related violations.[4]  *See id.* at 11:21-12:25 and Ex. 1.

{¶ 6} At approximately 2:34 a.m., the K-9 unit arrived to conduct a free-air search. *Id.* at Ex. 1.  The officer put aside the traffic citation to assist the K-9 unit, which included having Tillman exit his vehicle, and at approximately 2:38 a.m., the K-9 unit detected the possible presence of contraband.  *Id.* at 13:1-13:10 and Ex. 1.  A search of the interior of Tillman's vehicle yielded a crack pipe after roughly six minutes more.  *Id.* at Ex. 1; R.C. 2925.12(A) and (C) (establishing that possession of an instrument of drug abuse is a second degree misdemeanor, or if a defendant "previously has been convicted of a drug abuse offense," a first degree misdemeanor).  Tillman's person was then searched, and he was formally placed under arrest.  *Id.*

{¶ 7} On September 15, 2017, a Montgomery County grand jury indicted Tillman for two counts of aggravated possession of drugs pursuant to R.C. 2925.11(A) and (C)(1)(a).  Tillman filed a motion to suppress on February 5, 2018, in which he sought the suppression of all evidence obtained as the result of the traffic stop.  The trial court

---

[3] Exhibit "1" to the Transcript, introduced at the hearing on Tillman's motion to suppress and stipulated by the parties to be authentic, is the video recording produced by the camera system with which the officer's cruiser was equipped.  Transcript 4:12-5:8.

[4] The officer cited Tillman for traffic violations under provisions of the Kettering Municipal Ordinances that are essentially equivalent to R.C. 4511.13(C)(1)(a), 4513.04(A) and 4513.15(A)(1).

overruled the motion in a decision announced from the bench during a docket call on February 27, 2018.

{¶ 8} At a hearing on March 6, 2018, Tillman pleaded no contest to the first count of the indictment, possession of carfentanil. The State dismissed the second count, possession of methamphetamine, apparently in exchange for Tillman's plea. *See id.* at 46:11-46:20. On April 3, 2018, the trial court conducted a sentencing hearing, and on April 5, 2018, the trial court docketed a termination entry reflecting that Tillman had been sentenced to five years of community control sanctions. Later that day, Tillman timely filed his notice of appeal to this court.

## II. Analysis

{¶ 9} The assignment of error presented for our review is the following:

> THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING
>
> MR. TILLMAN'S MOTION TO SUPPRESS.

{¶ 10} Conceding that the traffic stop was initially lawful, Tillman argues that the officer unreasonably prolonged the stop by approaching his vehicle for the second time, because the second approach was unrelated to the issuance of a traffic citation. Appellant's Br. 5. Maintaining that the stop "could have [been], and should have been[,] completed in 15 minutes," Tillman observes that the officer's "actions did, in fact, extend the stop," given that the K-9 unit did not detect the possible presence of contraband until 16 minutes after the stop began.[5] *Id.* at 5-6.

---

[5] Tillman reasons that the stop should have been completed in 15 minutes because the officer testified that: (a) he requires an average of 12 minutes to prepare a traffic citation; and (b) he had all the information he needed to prepare a citation after his initial, three-minute conversation with Tillman. Appellant's Br. 5; *see* Transcript 24:16-25:13. Yet, the officer also testified that the overall duration of an average traffic stop is 20 minutes.

{¶ 11} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Taylor*, 138 Ohio App.3d 139, 145, 740 N.E.2d 704 (2d Dist.2000) (noting that "the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article 1" of the Ohio Constitution "protect the same interests in a consistent manner"). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of these exceptions "is commonly known as an investigative or *Terry* stop," which includes the temporary detention of motorists for the enforcement of traffic laws. *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Terry*.

{¶ 12} Though not necessarily requiring a warrant, the temporary "detention of [persons] during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. (Citations omitted.) *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An "automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. Generally, a police officer's decision to stop an automobile will comport with this requirement if the officer has a "reasonable suspicion" of criminal activity. *United States v. Lopez-Soto*, 205 F.3d 1101, 1104-1105 (9th Cir.2000); *State v. Mays*, 119 Ohio St.3d

---

Transcript 13:25-14:4.

406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. A "seizure justified only by a police-observed traffic violation," however, " 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). After "the reasonable * * * time for issuing [a] traffic citation has [elapsed], an officer must have a reasonable articulable suspicion of illegal activity to continue the detention." *State v. Ramos*, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523, ¶ 13 (2d Dist.).

{¶ 13} Appellate "review of a [trial court's ruling on a] motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA 2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA 2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside* at ¶ 8, citing *Fanning* and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997). Accordingly, we must evaluate the duration of the stop in this case in light of the totality of the circumstances and consider whether the officer who stopped Tillman diligently completed his investigation. *State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690, ¶ 22.

**{¶ 14}** Tillman argues that because the officer could have completed a traffic citation after approaching his vehicle for the first time, the officer's second approach was an impermissible extension of the stop. Appellant's Br. 5. A police officer may, however, make "inquiries into matters unrelated to the justification for [a] traffic stop, * * *, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), citing *Muehler v. Mena*, 554 U.S. 93, 100-101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *see also State v. Ogletree*, 2d Dist. Montgomery No. 27767, 2018-Ohio-2327, ¶ 3-13 and 23-29.

**{¶ 15}** Here, the officer testified that he requires an average of 12 minutes to draft a citation, and that the average duration of "a routine traffic stop [is] 20 minutes from the [initiation] of the stop, through [the] writing [of] a citation, to clearing the scene." Transcript 13:25-14:4 and 24:23-25:13. The officer first spoke with Tillman at approximately 2:22 a.m.; returned to his cruiser to conduct background checks, remaining there for three minutes; approached Tillman's vehicle for the second time at approximately 2:28 a.m.; and returned to his cruiser at approximately 2:31 a.m. Thus, when the officer finished speaking with Tillman for the second time, Tillman had been detained for only nine minutes, and the officer could still have completed a traffic citation and released Tillman without exceeding the duration of an average stop.[6] Furthermore, the officer diligently pursued his traffic-based investigation, by conducting standard background checks, in the three minutes he spent in his cruiser between his first and

---

[6] We recognize that had the officer spent exactly 12 minutes writing a citation after speaking with Tillman for exactly nine minutes, the stop would have taken a total of 21 minutes to complete.

second approaches to Tillman's vehicle. *Compare with City of Kettering v. Maston*, 2d Dist. Montgomery No. 27567, 2018-Ohio-1948, ¶ 16-21 (finding that a traffic stop was not unlawfully extended by a K-9 unit's free-air search because the officer who made the stop diligently performed the tasks necessary to complete a citation while waiting for another officer to respond and assist with the search), *and State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690, ¶ 30-32 (same). We find, then, that the officer did not unreasonably prolong the stop by approaching Tillman's vehicle for the second time.

**{¶ 16}** Following the officer's second approach, the facts known to him through observation and investigation were sufficient to support a reasonable suspicion that Tillman was engaged in criminal activity other than traffic violations. The term "reasonable suspicion means something more than an inchoate and unparticularized * * * 'hunch,' but something less than the level of suspicion for probable cause."[7] *Village of Chagrin Falls v. Calabrese*, 8th Dist. Cuyahoga No. 101197, 2014-Ohio-5340, ¶ 14, citing *Terry*, 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. To determine whether the officer had reasonable suspicion, "we evaluate the 'totality of the circumstances' " from the perspective of a hypothetical "reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991); *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14.

---

[7] Probable cause is "a fluid concept * * * not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A demonstration of probable cause generally "requires only a [likelihood] or substantial chance of criminal activity," not actual proof. *See id.* at 243, fn.13.

**{¶ 17}** After encountering the officer's cruiser on Shroyer Avenue, Tillman abruptly turned from Shroyer Avenue onto Cushing Avenue and proceeded to execute a series of additional, seemingly random turns in an apparent attempt to elude the officer—what the officer described in his testimony as "suspicious driving behavior through the plat." Transcript 9:13-9:25 and 10:9-10:14. The officer's background checks, which he performed after his first approach to Tillman's vehicle, revealed that Tillman had a significant criminal history. When the officer approached Tillman's vehicle for the second time, Tillman became nervous and indicated that he was travelling to a residence known to the officer to be associated with drug trafficking.

**{¶ 18}** Under those circumstances, we find that the officer had a sufficient basis on which to form a reasonable suspicion that Tillman was engaged, or was about to engage, in criminal activity other than violations of traffic laws. The officer, as a result, would have been entitled to continue investigating the possibility of other criminal activity despite the potential necessity of extending Tillman's detention beyond the time " 'reasonably required to complete th[e] mission' of issuing a [traffic citation]." *Rodriguez*, 135 S.Ct. at 1612, 191 L.Ed.2d 492, quoting *Caballes*, 543 U.S. at 407, 125 S.Ct. 834, 160 L.Ed.2d 842.

**{¶ 19}** Even if the circumstances did not give rise to a reasonable suspicion of other criminal activity, however, the officer did not unreasonably prolong the stop to allow time for a K-9 unit to arrive. After his second approach to Tillman's vehicle, the officer returned to his cruiser at approximately 2:31 a.m., immediately requested a K-9 unit, and began a traffic citation. The officer continued working on the citation until the K-9 unit arrived at approximately 2:34 a.m., an interval of three minutes. A total of 12 minutes

had passed since the officer initiated the stop.

{¶ 20} Through the time at which the K-9 unit arrived, the officer diligently conducted his investigation of Tillman's violations of traffic laws, including the preparation of a citation, and at that point, the stop had not been extended beyond the time reasonably necessary for the officer to finish his traffic-related investigation, to issue a citation, and to release Tillman. Moreover, the officer interrupted his processing of the citation only to assist the K-9 unit in accord with his department's standard operating procedure. Tillman's assignment of error is overruled.

### III. Conclusion

{¶ 21} We find that the traffic stop in this case was not impermissibly prolonged. The officer diligently investigated the traffic violations that prompted the stop and, in the course of that investigation, acquired further information sufficient to support a reasonable suspicion that Tillman was engaged in criminal activity other than violations of traffic laws, thereby warranting Tillman's continued detention for the completion of a free-air search. Even in the absence of reasonable suspicion, the officer diligently performed his duties and did not extend the stop beyond the time reasonably required for the issuance of a traffic citation. Therefore, we find that the trial court did not err by overruling Tillman's motion to suppress, and Tillman's conviction is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.

Michael P. Allen
Daniel J. Durocher
Hon. Mary Katherine Huffman