[Cite as *State v. Jennings*, 2024-Ohio-602.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29895 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 03316 |
| | : | |
| DUSTIN W. JENNINGS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 16, 2024

. . . . . . . . . . .

CHRISTOPHER BAZELEY, Attorney for Appellant

LUCAS T. CHRISTENSEN, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Dustin W. Jennings appeals from his conviction, following a plea of no contest, for aggravated possession of drugs. For the following reasons, we affirm.

I.      **Factual and Procedural Background**

{¶ 2} On September 7, 2022, at approximately 2:00 a.m., Moraine Police Officer Bryon Watson was on routine patrol when he observed a tan Chevrolet Silverado traveling on Main Street. Watson saw that the vehicle's license plate tags were expired. When he ran the license plate through his computer, he discovered that the plate belonged to a 2000 Ford F-350. Watson initiated a traffic stop for expired and fictitious license plates.

{¶ 3} When he approached the truck, Watson observed three males inside. Jennings was seated in the front passenger seat. Other officers arrived on the scene. The officers observed that Jennings was holding a backpack. Additionally, the officers observed flashlights and tools. A canine unit was requested, which arrived within approximately 10 minutes. During that time, Watson continued to speak with the driver. He subsequently discovered that the driver of the truck did not have a valid operator's license. Watson decided to have the truck towed.

{¶ 4} Thereafter, the three men were removed from the truck. Jennings did not have the backpack in his possession when he exited the vehicle. The canine unit conducted a free air sniff and alerted to the driver's side of the vehicle. During the subsequent search of the truck, the officers opened the backpack previously held by Jennings; the contents included a small black combination safe and letters with Jennings's name on them. A search warrant was obtained to search the safe. The search revealed the safe contained narcotics. Jennings denied ownership of the backpack and the safe.

{¶ 5} On December 16, 2022, Jennings was indicted on one count of aggravated possession of drugs in violation of R.C. 2925.11(A). He filed a motion to suppress, which

was overruled following a hearing. Thereafter, Jennings entered a plea of no contest and was found guilty as charged. The trial court sentenced him to community control for a period of five years.

{¶ 6} Jennings appeals.

## II. Suppression

{¶ 7} The first assignment of error states:

THE TRIAL COURT ERRED IN OVERRULING JENNINGS' MOTION TO SUPPRESS

{¶ 8} Jennings does not contest the propriety of the initial traffic stop. Instead, he argues that the motion to suppress should have been sustained because the police impermissibly extended the length of the traffic stop in order to conduct a canine sniff. He further argues that the State failed to demonstrate that the circumstances required the vehicle to be towed, thereby negating the claim that the police were entitled to conduct an inventory search of the vehicle.

{¶ 9} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation,

therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005).

{¶ 10} When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates. *State v. Thomas*, 2d Dist. Montgomery No. 22833, 2009-Ohio-3520, ¶ 14, citing *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, ¶ 15. In determining whether an officer completed the tasks of a traffic stop within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation. *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 17.

{¶ 11} Reasonable suspicion that a vehicle contains drugs is not required prior to conducting a canine sniff of the vehicle during a traffic stop so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. *State v. Johnson*, 2d Dist. Montgomery No. 20624, 2005-Ohio-1367, ¶ 19. Furthermore, the use of a trained narcotics dog to sniff an automobile does not constitute a "search" under the Fourth Amendment. *Pryor* at ¶ 13; *Caballes* at 409. If a trained canine alerts to the odor of drugs from a lawfully stopped and detained vehicle, an officer has probable cause to search the vehicle for contraband.

*State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 17.

**{¶ 12}** Here, the evidence demonstrates that Officer Watson made a valid traffic stop after observing the expired license plates on the vehicle. During the first five minutes of the stop, Watson called for a canine unit. The evidence establishes that the canine unit appeared on the scene within ten minutes of being called. When the canine unit arrived, Watson was still speaking with the driver regarding the expired and fictitious license plates. During this discussion, Watson also learned the driver's operator's license was suspended. Watson then returned to his cruiser, where the dashcam recorded a conversation between him and another officer; Watson noted the fictitious license plates and the driver's suspended license and indicated that he was going to have the vehicle towed.

**{¶ 13}** Jennings contends that Watson did not have authority to tow the vehicle. In support, he cites Moraine Municipal Ordinance 3.07, which he claims does not permit a vehicle to be towed for expired or fictitious plates. However, we note that section 307.02(i) does permit a vehicle to be towed if the driver does not have a valid operator's license. Jennings further claims that the officers should have allowed him or the other passenger to drive the vehicle after issuing citations to the driver. However, the officers were under no obligation to permit operation of a vehicle that had expired and fictitious license plates.

**{¶ 14}** Appellate review of a motion to suppress presents mixed questions of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the

credibility of witnesses. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) *Id.*

{¶ 15} The trial court did not err in overruling the motion to suppress. When the canine unit arrived, Watson was diligently investigating the issues created by the stop. As such, the stop was not prolonged to allow the free air sniff. The canine's alert provided probable cause to search the vehicle and eventually led to the drugs found in the safe. Given this sequence of events, Jennings's arguments regarding the vehicle tow and inventory search are irrelevant.

{¶ 16} The first assignment of error is overruled.

### III.    Plea

{¶ 17} Jennings asserts the following as his second assignment of error:

JENNINGS' PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY GIVEN.

{¶ 18} Jennings contends the trial court erred in accepting his plea because it was not knowing, intelligent, and voluntary.

{¶ 19} "In order for a plea to be given knowingly and voluntarily, the trial court must

follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13. To that end, a court shall not accept a plea of guilty in a felony case without first addressing the defendant personally and determining whether he is making the plea voluntarily and with full understanding of the nature of the charge and of the maximum penalty involved. Crim.R. 11(C)(2)(a). The court must also determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). Finally, the court must determine the defendant understands he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c).

{¶ 20} Jennings does not contest that the trial court complied with Crim.R. 11(C)(2)(b) and (c). Instead, his argument rests upon the claim that his plea must be vacated because it was made without his understanding that he would remain subject to electronic monitoring. In support, he cites to the following colloquy which occurred between him and the court during sentencing:

JENNINGS: Okay. And what's going on with this ankle monitor?

THE COURT: Well, when you go to Star [drug treatment program], it'll come off.

JENNINGS: Okay. I didn't - - I didn't really agree to that. That's not what I thought I was agreeing to last time.

THE COURT: Well, it's part of probation and it's a sanction, and so your probation officer will get ahold of me and then we can talk about this further, but right now that's a sanction of your probation, is to participate with the program.

JENNINGS: Okay.

Sentencing Tr. p. 63.

{¶ 21} From our review of the record, we find no basis for Jennings's assertion that he was not made aware that he would be subject to electronic monitoring. At the beginning of the plea hearing, the trial court specifically noted that Jennings wanted to terminate his electronic monitoring. The court, however, also noted that Jennings had failed to comply with terms of his probation in other pending cases before the court and had had multiple positive drug tests during the previous six months, including a positive test the week prior to the plea hearing. The court explicitly stated that the electronic monitoring order would not end until Jennings showed compliance with the terms of his community control sanctions. Thereafter, the court asked Jennings if he was prepared to go forward with a no contest plea. Jennings answered affirmatively. The trial court then conducted a Crim.R. 11 colloquy, after which Jennings entered a plea of no contest.

{¶ 22} Based upon the record before us, we find no merit to the claim that Jennings did not understand that he would remain subject to electronic monitoring. Further, we conclude that the record demonstrates Jennings's no contest plea was knowingly, intelligently, and voluntarily made. Accordingly, the second assignment of error is overruled.

## IV.     Jail Time Credit

{¶ 23} Jennings's third assignment of error states as follows:

THE TRIAL COURT FAILED TO CALCULATE HOW MANY, IF ANY, DAYS OF JAIL TIME CREDIT JENNINGS WAS ENTITLED TO AT SENTENCING

{¶ 24} Jennings asserts the trial court should have included a calculation of jail time credit in his judgment entry.

{¶ 25} In *State v. Bradley*, 2d Dist. Champaign No. 2002-CA-35, 2003-Ohio-4707, this court found no error when a trial court failed to calculate jail time credit where the defendant was sentenced to community control.   Specifically, we stated, "Defendant presently is serving a term of community control, and not a term of imprisonment[.] Therefore, there is no issue concerning jail time credit that can be determined at this time, either by the trial court or by this court. In other words, the issue Defendant raises in this appeal is not ripe for judicial review at this time. The appropriate time to raise that issue is when, and if, the trial court reimposes a sentence of imprisonment following Defendant's violation of his present community control sanctions."   *Id.* at ¶ 8; *accord State v. Noonan*, 12th Dist. Butler Nos. CA2018-10-203, CA2018-10-204, 2019-Ohio-2960, ¶ 33.

{¶ 26} Because Jennings has been sentenced to community control rather than a term of imprisonment, we find no error in the failure to calculate jail time.   Therefore, the third assignment of error is overruled.

## V. Conclusion

**{¶ 27}** All of Jennings's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.