[Cite as *State v. Leonard*, 2017-Ohio-8421.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

STATE OF OHIO                                              :

      Plaintiff-Appellee                          :    C.A. CASE NO. 27411

                                         :

v.                                                                     :    T.C. NO. 16-CR-1078

                                         :

THOMAS E. LEONARD                                    :    (Criminal Appeal from
                                         :     Common Pleas Court)

      Defendant-Appellant                        :

                                         :

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 3rd day of November, 2017.

. . . . . . . . . . .

HEATHER N. JANS, Atty. Reg. No. 0084470, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142 and DOUGLAS D. BRANNON, Atty. Reg. No. 0021657, 130 W. Second Street, Suite 900, Dayton, Ohio 45402
      Attorneys for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Thomas E. Leonard pled guilty in the Montgomery County Court of Common Pleas to one count of aggravated vehicular homicide, a felony of the third degree. The trial court sentenced him to 48 months in prison and suspended his driver's license for 10 years; the court did not fine Leonard or order restitution or court costs. Leonard appeals from his conviction, claiming that his trial attorney provided ineffective assistance. For the following reasons, the trial court's judgment will be affirmed.

## I. Background and Procedural History

{¶ 2} According to the presentence investigation report (PSI), around 7:20 a.m. on August 26, 2015, Leonard drove his Ford F-350 southbound on Interstate 75 in Montgomery County. Witnesses saw Leonard weaving in and out of traffic, driving at a high rate of speed, and causing several near-crashes. As Leonard proceeded down the highway, "he swiped another vehicle, causing the right-side mirror of that vehicle to be destroyed." Leonard continued from that crash without stopping.

{¶ 3} Near the exit for Ohio State Route 725, Leonard attempted to pass a vehicle that was driving in the right-hand lane. While attempting to pass the vehicle, Leonard drove on the right shoulder and collided with a 2003 Audi that was pulled over to the side of the highway, with its hazard lights illuminated. Witnesses noted that no brake lights were initiated on Leonard's truck. Mitchell Munoz, the driver of the Audi, was inside his vehicle, waiting for roadside assistance for a flat tire.

{¶ 4} The PSI further stated: "Upon impact, Mr. Leonard's vehicle suffered heavy damage to the right front corner and then overturned[,] sliding for an extended distance on the roof. The 2003 Audi was noted as being demolished[,] as the vehicle suffered

severe damage as a result of being run over and struck by Mr. Leonard's vehicle. The rear end and roof of the vehicle were separated from the car as a result of the crash." Leonard was transported to the hospital; Munoz was killed by the collision and declared dead at the scene. Blood tests at the hospital indicated the presence of cocaine and opiates in Leonard's blood.

{¶ 5} On June 1, 2016, Leonard was indicted for aggravated vehicular homicide. On June 21, 2016, Leonard's counsel filed a motion requesting "all relevant documents related to the entire crash reconstruction report" be produced; counsel itemized 22 items that were included in the request. On June 27, 2016, Leonard's counsel requested a continuance due to the "accident reconst[ruction] [report]." The trial court granted a continuance until July 21, 2016. On July 19, 2016, defense counsel filed a request for discovery, pursuant to Crim.R. 16(B).

{¶ 6} On July 29, 2016, the trial court set a final pre-trial conference for November 3, 2016, and scheduled the trial for November 14, 2016.

{¶ 7} On November 9, 2016, Leonard pled guilty to the charged offense of aggravated vehicular homicide; the parties had no agreement as to sentencing. (Leonard faced a possible maximum penalty of 60 months in prison, a fine up to $10,000, and a Class 2 driver's license suspension (3 years to life), plus restitution and court costs.) The trial court accepted Leonard's guilty plea, ordered a presentence investigation, and scheduled a sentencing hearing for December 16, 2016. The State subsequently filed a sentencing memorandum, detailing the circumstances of the collision and requesting a maximum sentence. Defense counsel sent a letter to the presentence investigator, advocating for "community control with a commitment to a lengthy drug treatment

program." Counsel's letter is part of the PSI.

{¶ 8} At the sentencing hearing, the trial court heard from members of Munoz's family, defense counsel, and Leonard, and it indicated that it had reviewed the presentence investigation report and the State's sentencing memorandum. As stated above, the trial court imposed 48 months in prison and suspended Leonard's driver's license for 10 years. Leonard appeals.

## II. Ineffective Assistance of Counsel

{¶ 9} In his sole assignment of error, Leonard claims that his retained counsel rendered ineffective assistance in two respects. He argues that his counsel failed to file any motions in his defense, other than a request for discovery, and that his counsel advised him to plead guilty to the charged offense without any agreement as to sentencing or any other incentive to plead guilty.

{¶ 10} We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 11} To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See id.*; *Bradley* at 142. A debatable decision concerning trial strategy cannot form the

basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, __ N.E.3d __, ¶ 38 (2d Dist.).

{¶ 12} Leonard's argument focuses on the fact that his trial counsel filed "one document" and then "five months later, trial counsel advised Mr. Leonard to plead guilty to the precise crime he had been charged with, with no agreement from the prosecution to reduce the severity of the charge, or even recommend a reduced sentence." Leonard likens his attorney's conduct to a "complete lack of action."

{¶ 13} A plea of guilty is a complete admission of guilt. *E.g., State v. Faulkner*, 2d Dist. Champaign No. 2013-CA-43, 2015-Ohio-2059, ¶ 9. Consequently, a guilty plea waives all appealable errors, including claims of ineffective assistance of counsel, except to the extent that the errors precluded the defendant from knowingly, intelligently, and voluntarily entering his or her guilty plea. *E.g., State v. Frazier*, 2016-Ohio-727, 60 N.E.3d 633, ¶ 81 (2d Dist.). If a defendant pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases." (Citations omitted.) *Frazier* at ¶ 81. Furthermore, "[o]nly if there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to trial will the judgment be reversed." *State v. Huddleson*, 2d Dist. Montgomery No. 20653, 2005-Ohio-4029, ¶ 9, citing *Hill v. Lockhart*, 474 U.S. 52, 52-53, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). (Other citations omitted.)

{¶ 14} The trial court conducted a plea hearing in accordance with Crim.R. 11. Leonard expressed that he was "voluntarily and of his own free will" pleading to

aggravated vehicular homicide, and he indicated that he understood that there was no agreement as to sentencing. There is nothing in the plea hearing transcript or the record as a whole that suggests that Leonard's attorney engaged in any conduct that rendered Leonard's plea other than knowing, intelligent, and voluntary.

**{¶ 15}** Moreover, we find nothing in the record to suggest that defense counsel acted deficiently. Leonard complains that his attorney failed to file additional motions, but he has not suggested what additional motions should have been filed. Leonard also claims that his attorney was ineffective in advising him to plead guilty, but there is nothing in this record expressly indicating that defense counsel advised Leonard to plead guilty. It is possible that it was Leonard, not his attorney, that preferred a plea, perhaps to avoid the victim's family from having to testify or in order to accept responsibility for his actions.

**{¶ 16}** Even if counsel had advised Leonard to plead guilty to the charged offense, the record suggests that such advice was a reasonable strategy. The record reflects that trial counsel requested and received extensive discovery from the State, including, among other things, the crash report, the accident reconstruction report, witness statements, laboratory reports, vehicle service records, the EMS run report for Leonard, information from Leonard's employer, a DVD containing the Montgomery County Coroner's Office's scene and autopsy photographs, a DVD containing the Ohio State Highway Patrol's crash scene photographs, a DVD containing surveillance video from the ODOT camera located at Interstate 75 and State Route 725, and curriculum vitae of the crash reconstructionist and coroner. (*See* Doc. #21, 29, 30, 71.)

**{¶ 17}** At sentencing, the trial court read aloud portions of the section of the State's sentencing memorandum that detailed some of the witness statements. The trial court

read:

"A grandmother-to-be was speeding home to Kentucky that morning for the birth of her grandchild. She admitted she was driving 80 miles per hour on I-75 South when a dually truck[1] sped past her, driving on the rumble strips in the right-side emergency lane. She saw the truck drive into her lane ahead of her, then drive back into the emergency lane, and then back onto the interstate, and then back into the emergency lane where she saw the truck rear-end a car that was in the emergency lane."

* * * "A retired truck driver was driving his wife to work that morning, when they came in contact with the defendant's lethal driving. His wife was so impacted by defendant's driving, she typed up a statement that same morning. She reported that a dually truck whizzed past them in the middle lane going extremely fast. And she boldened [sic] and upper-cased the word, 'extremely' in her statement. She thought that she and her husband had just merged into some kind of high-speed chase, but then realized that she was wrong when she saw that no pursuit vehicles were flashing lights."[2]

Another driver was headed for class that morning in Wilmington. He reports the defendant almost clipped his van as the defendant passed by

---

[1] A "dually" truck is a pickup truck that has dual rear wheels on each side. Matthew Suedkamp, What Is a Dually Truck?, https : // itstillruns . com /dually –truck -6962287 .html (accessed Sept. 2017).

[2] This sentence of the sentencing memorandum actually reads, "She thought that she and her husband had just merged into some kind of high speed chase but then realized she was wrong when she saw *no pursuit vehicles with flashing lights.*" (Emphasis added.)

driving in the grass berm and then cut over in front of him. He reports seeing the defendant hit the left side of another pickup truck and then return to driving in the grass berm. He reports seeing a car stopped in the far-right safety lane with his hazard lights on. He then saw the defendant veer into the safety lane and strike the parked car without hitting his brakes, and then sending the parked car down into the ditch. He estimated the defendant was driving 90 to 100 miles per hour as he passed people in the grass.

And a witness from Tipp City was driving on southbound I-75 and headed to work. She spotted a dark dually truck speeding past her, driving over the rumble strips in the emergency lane. She was driving about 70 miles per hour. She felt the highway shaking as he sped past her.

Another witness from Tipp City reports first spotting defendant on south I-75 after driving past State Route 35. She reports the defendant was driving very fast and switching lanes and driving on the shoulder of the highway, and also in the grass. She estimated the defendant drove in this lethal manner, in and out of traffic, for at least five to ten miles before crashing into the rear of a disabled vehicle stopped in the shoulder with its flashers on.

(Footnotes added.)

**{¶ 18}** The trial court also read a portion of the State's sentencing memorandum that detailed the traffic reconstruction results. The court read:

"The crash report calculated that the severely damaged Audi, Mr. [Mitchell]

Munoz's car, reached a post-impact speed of 49 to 54 miles per hour from the force of the collision. The traffic crash expert calculated that at the point of impact when defendant crashed into the rear of Mitchell's stopped Audi, defendant's truck was travelling at a speed of 108 to 117 miles per hour. The posted speed limit is 65 miles per hour. There was no sign of breaking prior to the impact."

{¶ 19} Although the discovery received by defense counsel is not in the record, defense counsel did not object to the trial court's statements at the sentencing hearing or otherwise indicate that the facts as set forth in the PSI and the State's sentencing memorandum were inaccurate.

{¶ 20} In the light of the factual circumstances, as presented in the PSI and sentencing memorandum, defense counsel could have reasonably concluded that Leonard did not have a reasonable chance of success at trial and that Leonard's best option was to plead guilty, express remorse, and seek leniency from the trial court at sentencing. The State's sentencing memorandum sought a maximum sentence, and there is no indication in the record that the State would have agreed to a plea to a reduced charge or to a lesser sentence. Based on the record before us, defense counsel engaged in a reasonable strategy, which we will not second-guess.

{¶ 21} Leonard's assignment of error is overruled.

### III. Conclusion

{¶ 22} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Heather N. Jans
Matthew C. Schultz
Douglas D. Brannon
Hon. Dennis J. Langer