[Cite as *State v. Ogletree, Jr.*, 2018-Ohio-2327.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27767 |
| | : | |
| v. | : | T.C. NO. 2017-CR-1183 |
| | : | |
| JESSE M. OGLETREE, JR | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 15th day of June, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR. by MICHAEL ALLEN, Atty. Reg. No. 0095826, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee


J. ALLEN WILMES, Atty. Reg. No. 0012093, 7821 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .


DONOVAN, J.

{¶ 1} This matter is before the Court on the October 17, 2017 Notice of Appeal of Jesse Ogletree. Ogletree appeals from his September 20, 2017 Judgment Entry of Conviction, following a no contest plea, on one count of possession of cocaine (less than five grams), in violation of R.C. 2925.11(A), a felony of the fifth degree. The trial court sentenced Ogletree to twelve months in prison. We hereby affirm the judgment of the trial court.

{¶ 2} Ogletree was indicted on June 1, 2017, and on June 16, 2017, the court entered a not guilty plea on behalf of Ogletree at his arraignment. On June 29, 2017, Ogletree filed a motion to suppress, and a hearing thereon was held on July 26, 2017. At the hearing, Officer Josh Bowling of the City of Dayton Police Department testified that he was working on April 11, 2017, on routine patrol in the area around Good Samaritan Hospital, along with Officer Betsinger. Officer Bowling testified that the area is known as the Phoenix Project, which "is basically a rejuvenation project of the neighborhood that's sponsored by Good Sam and [C]itywide and we are responsible for rejuvenating the neighborhood, taking care of the houses and people that move in, all the neighboring businesses." Officer Bowling stated that in the area "there is quite a bit of drug activity and that's one of our main responsibilities."

{¶ 3} Officer Bowling testified that on April 11, 2017, he stopped a black Volvo SUV at 721 Burbank Drive. When asked if there was anything unusual about the vehicle, Officer Bowling testified as follows:

Yeah, the vehicle initially had turned into - - we were traveling north on
Burbank, actually, and the car actually turned in. And what I mean by that

it came and would go essentially head-on with us in different directions. It turned in without using its blinker 100 feet prior. It's something we see when someone's usually trying to evade police contact, so. When I turned around and get behind the car to run the vehicle's license plate, essentially, the driver sped up quite a bit and was failing to stop at marked stop signs and stoplights and was actually going to the right of some traffic to get by vehicles. And then, essentially, the car had went and made a big circle to go back to our original spot where I first saw the vehicle. And this was, you know, called my attention.

Tr. 7-8.

{¶ 4} Officer Bowling testified that he activated his overhead lights, and the driver of the vehicle, Ogletree, pulled into a residential driveway at 721 Burbank Drive. Officer Bowling stated that the driver "quickly exited the driver's side of the Volvo," which "alarmed me for officer safety * * * because as everyone knows on a traffic stop, you're supposed to stay inside of your car." Officer Bowling testified that Ogletree "had an attitude about saying he wasn't doing anything, that he was at his parents' house and that he - - essentially, we couldn't pull him over once he reached his house." Officer Bowling stated that he and Officer Betsinger advised Ogletree, " ' Stop, come here; we need to speak with you; this is a traffic stop.' He continued to walk towards the house." At that point, according to Officer Bowling, "[Officer] Betsinger actually went and took hold of Jesse Ogletree." Officer Bowling testified that Ogletree was "patted down for officer safety and placed in the back of our cruiser until we could figure out exactly what was going on." Officer Bowling stated that his intention at that time was to "just conduct the

traffic stop that we had initially pulled him over for the moving violations." When asked how much time that process requires, Bowling responded, "[d]epending on how many code violations are involved, I'd say ten minutes or more." Officer Bowling testified that he began working on the citation as soon as Ogletree was detained in the cruiser, and that "within the first several minutes of our stop" he requested a K-9 unit to perform a drug sniff. Officer Bowling stated that the K-9 unit arrived approximately eight minutes later, and that he had not yet completed the citation at that time.

{¶ 5} Officer Bowling stated that the K-9 officer advised him that the dog had "alerted" on the Volvo, and that Betsinger accordingly "did the preliminary search and we always go back through because * * * sometimes there's things that we'll miss as officers so I was the second officer in the vehicle." Officer Bowling stated that when he "opened the driver door, I immediately saw a torn baggie which would be - - there's a center console but in front of that where you would keep like change and miscellaneous items, there was a torn baggie in plain view and that's where I located * * * what appeared to be crack cocaine." Officer Bowling stated that Ogletree was placed under arrest. He identified State's Exhibit 1 as the cruiser camera video of the stop, which was admitted without objection.

{¶ 6} On cross-examination, Officer Bowling testified that he followed Ogletree's vehicle due to Ogletree's failure to signal 100 feet before turning. Officer Bowling stated that Ogletree turned onto Burbank Drive from a side street and then drove around the block from the location where he was initially observed. Officer Bowling testified that he activated his lights once Ogletree pulled into the driveway, and that his cruiser camera automatically records the previous "30 seconds prior to the lights being engaged."

Officer Bowling stated that Ogletree failed to stop at Otterbein Avenue and Burbank Drive, Burbank Drive and Harvard Boulevard, and then at Harvard Boulevard and Philadelphia Drive as he proceeded around the block. When asked if he was aware that "the only thing * * * that's on Dayton Municipal Court's website is that he was cited for turn signals and changing course," Officer Bowling responded, "I am now."

{¶ 7} Officer Bowling testified that Ogletree exited his vehicle after the cruiser's overhead lights were on. Officer Bowling stated that he called for the K-9 unit so "the K-9 could perform an open-air sniff of the vehicle." Officer Bowling stated that Ogletree indicated at the scene that he had pulled into his parents' driveway. Officer Bowling stated that the owners of the residence came outside in the course of the stop and claimed to be Ogletree's parents.

{¶ 8} Officer Theodore Trupp next testified that he is a City of Dayton police officer assigned to the K-9 unit, and that he responded to Ogletree's traffic stop. Officer Trupp stated that he is certified by the State of Ohio as a K-9 handler, and that Baron, his K-9 partner, is also certified and "considered a dual-purpose K-9. He's trained in patrol and he's also trained in narcotics detection." Officer Trupp stated that Baron is "trained on heroin, crack cocaine, marijuana, methamphetamines, ecstasy and any combination or derivative of those drugs."

{¶ 9} Officer Trupp testified that he was "at James H. McGee Boulevard near Germantown" when he was dispatched to the traffic stop, and that he arrived at the stop in eight minutes. Officer Trupp stated that he began the "open-air sniff" within a minute of his arrival. Officer Trupp testified that Baron "alerts" by sitting down. Officer Trupp stated that he began the sniff at the front license plate of the Volvo, and Baron alerted

"halfway behind the driver's door and the back driver's side passenger, rear door." Officer Trupp stated that the open-air sniff process is "very quick," lasting one to two minutes "max." Trupp testified that he remained on scene after the sniff for purposes of officer safety. Officer Trupp stated that two other individuals present at the scene "were excited," and yelling at Ogletree to calm down, and that Ogletree was "[v]ery excited, belligerent" and "screaming in the back seat" of the cruiser.

{¶ 10} On August 8, 2017, the trial court rendered an oral decision on the motion to suppress. At the start of the hearing, the trial court indicated that it viewed the cruiser camera video "in its entirety several times." The trial court noted that Officer Bowling observed the Volvo which on the video "can be seen traveling at a high rate of speed." The court noted that the area is known for drug activity. According to the trial court, Officer Bowling's "testimony that was undisputed was that the officer observed numerous traffic violations including turning without a signal [and] running several stop signs." The court noted that Officer Bowling activated his lights as Ogletree pulled into the driveway on Burbank, and that Ogletree's "behavior from the very beginning is belligerent, profane among other things." The trial court noted that Ogletree "quickly exited the vehicle which caused concern for officer safety." The trial court further noted that the officers were "extremely cordial," and that when Ogletree continued to walk away, the "officers took hold of the defendant, patted him down, placed him in a cruiser," while Ogletree's confrontational behavior continued.

{¶ 11} The trial court noted the "undisputed testimony is that it takes at least ten minutes to write a ticket. There were numerous violations." The trial court determined that "the tickets were not finished when the K-9 alerted which was within eight minutes of

the time the defendant was stopped." The trial court indicated that it is "not making any finding that the stop was prolonged. But any extension of the stop was as a result of the defendant's belligerent behavior. It was not as a result of any effort by the officers to delay matters."

{¶ 12} The trial court noted from the video that the cruiser's lights were activated at 19:26, that the "officer got out of his vehicle at 19:27," and that "[t]hey began writing the tickets at 19:38," 11 minutes after the stop began. The trial court noted that at that time Ogletree was "already yelling about how did the K-9 alert. So I don't know exactly what time it is but the undisputed testimony from the officer was it was within eight minutes." The trial court noted that Officer Trupp testified that he began the sniff within one minute of his arrival. Citing *State v. Pryor*, 2d Dist. Montgomery No. 20800, 2005-Ohio-2770, the trial court determined that "a trained narcotics dog sniff does not constitute a search; however, if the dog alerts that creates probable cause for the search of the vehicle which is what happened here."

{¶ 13} The trial court concluded as follows:

The Court will find that the traffic stop, the purpose was not completed at the time the dog alerted. Specifically, the officer testified and the testimony was undisputed that it takes approximately ten minutes to write a ticket. There were numerous tickets to be written here for the defendant. The defendant's belligerent behavior, if anything, extended the stop not the officers' delay or efforts at delay. And, in any event, the alert was made between eight and nine minutes after the stop and the tickets were not yet finished.

The Court will find that there was reasonable suspicion as well as probable cause for the stop; there was no extension of the traffic stop as a result of [the] dog sniff. In addition, the alert by the dog created probable cause for the search. There was no violation of the defendant's Fourth or Fifth Amendment rights and the motion to suppress is overruled in its entirety.

Tr. 40.

{¶ 14} Ogletree asserts two assignments herein. His first assignment of error is as follows:

{¶ 15} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE MOTION TO SUPPRESS EVIDENCE OBTAINED VIA AN ILLEGAL SEARCH WHEREIN APPELLANT WAS EXTENSIVELY DETAINED TO ALLOW FOR AN UNJUSTIFIED DOG SNIFF."

{¶ 16} Ogletree asserts that the cruiser camera video "shows that Ogletree was detained while in his own driveway for approximately fourteen minutes while the dog sniffing crew was summoned." He asserts that Officer Bowling testified that he "cited Ogletree for failure to signal when changing lanes," and although Ogletree "became very verbal, emotional, even semi-belligerent at being detained in his own driveway, he was only cited for one simple moving violation."

{¶ 17} Ogletree argues that there "was no evidence adduced at the motion to suppress hearing that the arresting officer had any suspicion that Ogletree had illegal drugs in his vehicle. He simply called for the drug sniff pro forma and without an articulated or even implied basis." Ogletree asserts that there "was also no testimony

that it took an unusual length of time to write the above citation nor that there were any problems or delays in checking Ogletree's license, registration, or insurance." Ogletree argues that the "facts at bar are largely analogous" to those in *Rodriguez v. United States*, ___ U.S. ___, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). According to Ogletree, if "the arresting officer herein could have written the instant ticket and checked [identification] within seven minutes (approximately), it was a ruse to keep Ogletree detained longer to await the 'drug dog.' "

{¶ 18} The State responds that "Officer Bowling did not prolong the traffic stop in order to conduct a free-air sniff and investigate Ogletree." The State asserts that "Officer Trupp's arrival and the free-air sniff took place while Officer Bowling was still writing the ticket for Ogletree's traffic violations." According to the State, the officer in *Rodriguez* "purposefully extended the stop and requested backup after issuing the ticket," and the "facts in the present case distinguish it from *Rodriguez*." The State asserts that the matter herein is "factually similar to *State v. Matheney*, 2d Dist. Montgomery No. 26876, 2016-Ohio-7690." The State argues that in the course of the stop, "Officer Bowling was following normal procedures and did not take any actions that unreasonably prolonged the stop to allow time for a K-9 unit to arrive."

{¶ 19} As this Court has previously noted:

> In deciding a motion to suppress, the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Pence*, 2d Dist. Clark No. 2013 CA 109, 2014–Ohio–5072, ¶ 7, citing *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996). The court of appeals must accept the

trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005–Ohio–3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. *State v. Orr*, 91 Ohio St.3d 389, 391, 745 N.E.2d 1036 (2001). A police officer may stop and detain a motorist when he or she has a reasonable, articulable suspicion that the motorist has committed, is committing, or is about to commit any criminal offense, including a traffic offense, without running afoul of constitutional protections. *State v. Mays*, 119 Ohio St.3d 406, 2008–Ohio–4539, 894 N.E.2d 1204, ¶ 7–8; *State v. Stewart*, 2d Dist. Montgomery No. 19961, 2004–Ohio–1319, ¶ 13, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We determine the existence of reasonable, articulable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Gladman*, 2d Dist. Clark No. 2013 CA 99, 2014–Ohio–2554, ¶ 14, quoting *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003–Ohio–1047, ¶ 14.

In determining whether police intrusion upon a citizen's protected liberty interests is reasonable, both the extent of the intrusion and the basis for suspicion must be considered. In other words, the greater the intrusion, the greater the basis for suspicion must be. *State v. Spillers*, 2d Dist. Darke No. 1504, 2000 WL 299550, * 3 (Mar. 24, 2000), citing *Xenia v. Beatty*, 2d Dist. Greene No. 93–CA–28, 1994 WL 124853 (April 13, 1994) and *Terry*.

* * *

*State v. Nelson*, 2d Dist. Montgomery No. 27324, 2017-Ohio-2884, ¶ 4-6.

{¶ 20} In *Rodriguez*, Dennys Rodriguez and his passenger were stopped at 12:06 a.m. by Officer Struble for driving on the shoulder of the highway, which Nebraska law prohibits. 135 S.Ct. at 1612. Struble was a K-9 officer, and his K-9 was present in his patrol car at the time of the stop. After obtaining Rodriguez's license, registration, and proof of insurance, and conducting a records check on him, Struble returned to Rodriguez's vehicle and obtained the passenger's identification and inquired regarding the men's activity that night. *Id.* at 1613. Struble then returned to his patrol car and performed a records check on the passenger. *Id.* Struble next began writing a warning ticket for Rodriguez for driving on the shoulder. *Id.* By 12:27 or 12:28 a.m., Struble had completed issuing the warning and returned both men's documents. *Id.*

{¶ 21} Although the purpose for the traffic stop was completed, Struble asked permission to walk his dog around the vehicle, and Rodriguez said no. *Id.* Struble then advised Rodriguez to turn off the vehicle and wait in front of his patrol car for a second officer to arrive. *Id.* At 12:33, a deputy sheriff arrived and Struble led his dog twice around Rodriguez's vehicle. The dog alerted on the second pass, and "seven or eight

minutes had elapsed from the time Struble issued the written warning until the dog indicated the presence of drugs. A search of the vehicle revealed a large bag of methamphetamine." *Id.*

{¶ 22} Rodriguez was indicted on one count of possession with intent to distribute, and he filed a motion to suppress, arguing that "Struble had prolonged the traffic stop without reasonable suspicion in order to conduct the dog sniff." *Id.* The Magistrate Judge determined no probable cause existed to search the vehicle apart from the K-9 alert, and that "no reasonable suspicion supported the detention once Struble issued the written warning." *Id.* The Magistrate Judge concluded, however, "that under Eighth Circuit precedent, extension of the stop by 'seven to eight minutes' for the dog sniff was only a de minimis intrusion on Rodriguez's Fourth Amendment rights and was therefore permissible." *Id.* The District Court adopted the Magistrate Judge's findings and conclusions. *Id.* at 1614. The Eighth Circuit affirmed. *Id.*

{¶ 23} The United States Supreme Court "granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Id.* The Court noted that a "seizure for a traffic violation justifies a police investigation." *Id.* The court further noted that authority "for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* Citing *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), and *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), the *Rodriguez* court noted that in "both cases, we concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention. *Johnson*, 555 U.S., at 327-

328, 129 S.Ct. 781 (questioning); *Caballes*, 543 U.S., at 406, 408, 125 S.Ct. 834 (dog sniff)." *Id.*

**{¶ 24}** The *Rodriguez* court noted that in addition to determining whether to issue a ticket, "an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.' *Caballes*, 543 U.S., at 408, 125 S.Ct. 834. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 1615. According to the Court, these "checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* The Court continued that a "dog sniff, by contrast, is a measure aimed at 'detect[ing] evidence of ordinary criminal wrongdoing.' * * *." According to the Court, "[l]acking the same close connection to roadside safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* The Court concluded that "[h]ighway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular." *Id.* at 1616.

**{¶ 25}** As this Court noted in *State v. Hall*, 2017-Ohio-2682, 90 N.E.3d 276, ¶ 10 (2d Dist.):

>  Notably, the *Rodriguez* majority explicitly rejected the government's argument that an officer may "incrementally" prolong a stop to perform a drug sniff provided he "is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other stops involving similar circumstances." *Id.* at 1616. The Court emphasized that reasonableness "depends on what

the police in fact do," and diligence is measured "by noting what the officer actually did and how he did it." *Id.* * * *

**{¶ 26}** The *Rodriguez* court concluded as follows:

* * * If an officer can complete traffic-based inquiries expeditiously, then that is the amount of "time reasonably required to complete [the stop's] mission." *Caballes*, 543 U.S., at 407, 125 S.Ct. 834. As we said in *Caballes* and reiterate today, a traffic stop "prolonged beyond" that point is "unlawful." *Ibid.* The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, * * * but whether conducting the sniff "prolongs" – i.e., adds time to - "the stop," *supra*, at 1615.

*Id.* at 1616.

**{¶ 27}** The *Rodriguez* court noted that while the "Magistrate Judge found that detention for the dog sniff in this case was not independently supported by individualized suspicion," and the "District Court adopted the Magistrate Judge's findings," the "Court of Appeals, however, did not review that determination." *Id.* The court vacated the judgment of the United States Court of Appeals for the Eighth Circuit and remanded the matter for further proceedings. *Id.* at 1617.

**{¶ 28}** We have reviewed the cruiser camera video herein, and we conclude that in overruling Ogletree's motion to suppress, the trial court accurately represented what is depicted in the video. Unlike in *Rodriguez*, Ogletree's stop was not "otherwise-completed" at the time of the dog sniff. In other words, Bowling did not prolong, or add time to, Ogletree's traffic stop in order to perform the dog sniff, and the duration of the stop did not exceed the time required to complete his traffic-related inquiries or tasks.

Thus, the trial court did not err when it overruled Ogletree's motion to suppress.

{¶ 29} Ogletree's first assignment of error is overruled.

{¶ 30} Ogletree's second assignment of error is as follows:

{¶ 31} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO FULLY DEVELOP AND ARGUE THE PROLONGED AND UNJUSTIFIED DETENTION BY POLICE TO ALLOW A DOG SNIFF."

{¶ 32} According to Ogletree, "the chief, possibly sole, reason why the evidence obtained in the instant search should be suppressed was the inordinately lengthy detention of Ogletree so the dog sniff could be requested." Ogletree argues that at the suppression hearing, "Officer Bowling should have been asked a series of questions of how long it took to write a single ticket and to check on Ogletree's information." Had he done so, Ogletree asserts, "the contrast of the reasonable time for these ministrations with the video recording of the incident would have bolstered the argument that Ogletree experienced a 'seven or eight minute' unnecessary detention, directly analogous to that in *Rodriguez supra*."

{¶ 33} The State responds that "the record shows that the testimony was supported by video evidence and would not have been refuted with any additional questioning." The States notes that the "trial court made its decision after viewing the cruiser video, and found that it showed Officer Bowling was still writing the ticket after the K-9 had alerted on the vehicle." The State argues that as "the trier of fact, the trial court had the discretion to determine if the officer's testimony was credible and supported by the cruiser video. Ogletree has shown no prejudice by the lack of additional questions

asked by his trial attorney." The State argues that the cruiser camera video "corroborates the testimony given, and there is no evidence in the record that any additional questions would have disputed the testimony or the video." Finally, the State asserts that "Officer Bowling's testimony and the police cruiser video were consistent as to the length of time it took him to write the ticket and the lack of any intentional prolonging of the stop by the officers."

{¶ 34} As this Court has previously noted:

We review alleged instances of ineffective assistance of trial counsel under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Id.*; *Bradley* at 142. A debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524–525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017–Ohio–400, 84 N.E.3d 193, ¶ 38 (2d Dist.).

*State v. Leonard*, 2d Dist. Montgomery No. 27411, 2017-Ohio-8421, ¶ 10-11.

**{¶ 35}** Upon review, we conclude that the record fails to support Ogletree's claim that his counsel was ineffective at the suppression hearing for failing to properly develop the theory of undue delay. As previously stated, Officer Bowling testified that it generally takes ten minutes or more for him to write a traffic ticket. During the time in which Officer Bowling was writing the ticket, Officer Trupp arrived with his K-9 unit and performed a free air sniff around Ogletree's vehicle, alerting on the middle driver's side. In fact, Bowling had not finished writing the ticket when the K-9 unit alerted on the vehicle. The trial court found that Officer Bowling's testimony was corroborated by the cruiser video. Other than his bare assertion to the contrary, Ogletree cannot establish that he was prejudiced by his counsel's failure to ask additional questions regarding the initial stop and the time it took for Officer Bowling to complete the traffic ticket. Officer Bowling's testimony and the cruiser video were consistent regarding the length of time required to complete the ticket and the lack of intentional prolonging of the stop by any of the officers involved. Therefore, we find that Ogletree cannot establish that counsel provided ineffective assistance by failing to ask Officer Bowling additional questions. On the record before us, there is no evidence that additional questioning would have changed any of the trial court's findings regarding the length of the stop.

**{¶ 36}** Ogletree's second assignment of error is overruled.

**{¶ 37}** Both of Ogletree's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

Michael Allen
J. Allen Wilmes
Hon. Mary Katherine Huffman